UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JEFFEREY VAN WRIGHT | * | CIVIL ACTION NO. 19-13426 |
| | * | |
| VERSUS | * | SECTION: "D"(1) |
| | * | |
| HORNBECK OFFSHORE SERVICES, L.L.C. AND ANADARKO PETROLEUM CORP. | * | JUDGE WENDY B. VITTER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

## ORDER AND REASONS

Before the Court is plaintiff Jeffery Van Wright's Motion to Quash Subpoena issued by the defendants to MetroPCS (Rec. Doc. 31). For the following reasons, the Motion to Quash is GRANTED in part and DENIED part. The subpoena is hereby limited to the period of December 3, 2018 to December 19, 2018 and limited to exclude the phone number used by Mrs. Van Wright. When the records are received by defendants' counsel, they will forward them to Mr. Van Wright's counsel without reviewing them. Mr. Van Wright's counsel will confirm that Mrs. Van Wright's phone records and information for the period from December 1, 2018, through December 2, 2018, and from December 20, 2018 through December 31, 2018 are excluded and if they are not, shall redact them. For the period of December 3, 2018 through December 13, 2018, Mr. Van Wright's counsel may redact the phone numbers, except for their area codes and except for the phone number of Mr. Moore. Also for the period of December 3, 2018 through December 13, 2018, Mr. Van Wright's counsel may redact location data.

## Background

Mr. Van Wright alleges that he suffered an injury while aboard the M/V HOS BRIARWOOD, a vessel owned and/or operated by Hornbeck Offshore Services, LLC ("Hornbeck"). At the time, he was employed by Omni Energy Services and assigned duties aboard

1

the LUCIUS platform, owned by Anadarko Petroleum Corporation ("Anadarko"). When not working, he was transferred to the BRIARWOOD where he had his own stateroom with a private bathroom. On December 13, 2018, the BRIARWOOD was headed for shallow water to avoid bad weather associated with an approaching cold front. Mr. Van Wright alleges that on December 14, 2018, he was thrown violently about the vessel and sustained severe and disabling injuries. In his deposition, Mr. Van Wright explained that he was in his bathroom washing his hands, lost his balance, and fell onto the toilet seat, breaking it.

He filed suit on November 5, 2019 against Hornbeck and Anadarko. Trial is set to begin on May 24, 2021. The deadline to complete discovery is March 1, 2021.

The motion presently before the Court concerns a subpoena issued by the defendants to MetroPCS seeking all records evidencing activity for the period of December 1, 2018, through December 31, 2018, for Mr. Van Wright's phone number and the phone number of his wife, Pamela Van Wright. The request includes network event location data, bills and invoices, telephone call history, call detail records including cellular tower data and cellular location data, and text messages. Specifically excluded from the request are the contents of any text messages.

Mr. Van Wright seeks to quash the subpoena, arguing that the cell phone records of Mr. Van Wright and his wife (who is not a party to this litigation) are irrelevant and an invasion of his privacy. He suggests that the documents might even breach the attorney/client privilege because he retained counsel in December 2018. Mr. Van Wright argues that to the extent the defendants are attempting to mount a fraud defense, they have failed to plead it in their answer. He notes that he advised defendants who he recalls speaking to. Defendants have already deposed one such person and obtained his text messages with Mr. Van Wright. He argues there is no cause for production of his cell phone records and insists that defendants merely seek to harass by calling

2

everyone who is listed on the records to see if Mr. Van Wright told them about the accident. Mr. Van Wright further argues that that subpoena is overbroad. He submits that there is no evidence that he was on his cell phone at the time of the accident. He argues that defendants have not explained why his phone records for weeks before and after the accident would be relevant.

Defendants oppose. They argue that the subpoena's request is narrowly tailored to seek Mr. Van Wright's call history and the date and time of text messages so they can find out who Mr. Van Wright communicated with during the critical time period surrounding his accident. They explain that discovery has uncovered inconsistencies in Mr. Van Wright's representations regarding who he spoke to and what they spoke about. First, they note that the accident was unwitnessed and they argue there is no objective evidence of his alleged injuries. They cite a report of the physician retained by Mr. Van Wright's employer for a second medical opinion ("SMO"), who reported that his injuries are degenerative and predated the incident. Defendants point out that Mr. Van Wright hired counsel within 72 hours of returning to land and immediately began treating with Dr. Clark Gunderson, a physician recommended by counsel. Defendants point to Mr. Van Wright's deposition testimony that he did not call any friends or family after his accident except possibly his wife and father and that he did not text or email anyone regarding the accident. Defendants learned at Mr. Van Wright's deposition that Darwin Moore drove Mr. Van Wright to the emergency room on December 18, 2018, and to several of his appointments with Dr. Gunderson. Mr. Van Wright testified that Mr. Moore drove him because they used to play poker together and Mr. Moore's wife goes to the same church as Mr. Van Wright. Mr. Van Wright disclosed that Mr. Moore had also been a patient of Dr. Gunderson, but Mr. Van Wright testified that he had no idea if Mr. Moore "had some type of work place accident or anything." Mr. Van

Wright was asked if he spoke to Mr. Moore about hiring a lawyer, and he answered "not that I recall."

But defendants submit that this testimony is contradicted by the testimony of Mr. Moore, who testified that he received a call from Mr. Van Wright while he was offshore and that Mr. Van Wright asked him questions about whether he should file a lawsuit. Mr. Moore testified that he advised Mr. Van Wright to "try and get off the ship" and that he knew some attorneys that could help him. Mr. Moore also revealed a December 16, 2018, text message exchange between he and Mr. Van Wright in which Mr. Moore noted "don't worry about nothing my lawyer will take of you while you off work." Mr. Moore testified that Mr. Van Wright lied about not talking to him about hiring a lawyer, explaining that Mr. Moore drove Mr. Van Wright to an appointment with his lawyer before he took him to the emergency room on December 18, 2018. Mr. Moore also testified that Mr. Van Wright questioned Mr. Moore about symptoms of Mr. Moore's back injury so that he could use the same complaints in describing his alleged injury. Mr. Moore further testified that Van Wright described how he would fake the injury by screaming every time he was touched when being examined by Dr. Gunderson.

Based on this discovery, defendants argue that the phone records are relevant and discoverable. They note that they are not seeking the contents of any text messages and that, therefore, the attorney-client privilege is not implicated. See Winter v. Bisso Marine Co., No. CIV.A. 13-5191, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014) ("[M]ere logs of calls or text messages to plaintiff's attorney, or anyone else, are not privileged."). They argue that the records they seek may reveal whether Mr. Van Wright made any calls or texts to anyone else while offshore. They submit that Mr. Van Wright has not been completely forthcoming with documents or information. They say that in addition to the discrepancies described above, in his response to

4

a request for videos from his cell phone concerning the accident, he responded "none." But at his deposition, he revealed that he had taken video from the vessel of the sea and other weather conditions and also took a photograph of his head.

At oral argument, Mr. Van Wright's counsel was indignant. He argued that there are voluminous medical records that serve as objective evidence of Mr. Van Wright's injury. He added that the toilet seat was broken and that Mr. Van Wright had a bump on his head. He insisted that the phone records are nothing but an unjustified fishing expedition. He complained that defendants' counsel would just call everyone on the phone record.

Defendants responded that they would not call everyone on the phone records, but they admitted that they would probably call some of the numbers listed to find out if Mr. Van Wright had talked to them about the accident. They also said the phone records were relevant to show whether Mr. Van Wright's cell phone was working while he was on the job because he testified that his phone was not working.

Defendants also noted that they do not need any records for Mrs. Van Wright. They only listed her name because they did not know whose name was on the account or what phone line Mr. Van Wright was using. Mr. Van Wright's counsel said he could find out what phone line Mr. Van Wright was using during the relevant period.

## Law and Analysis

1. *Standard to Quash a Subpoena or for a Protective Order*

Under Federal Rule of Civil Procedure 45, the Court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ.

5

Proc. 45(d)(3); see Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). The moving party bears the burden of showing that compliance with the subpoena would be unduly burdensome. Wiwa, 392 F.3d at 818; Informd, LLC v. DocRX, Inc., No. MC 16-83-JJB-EWD, 2016 WL 7478962, at *3 (M.D. La. Dec. 29, 2016).

Among other things, the court considers the relevance of the information requested when assessing the burden. Wiwa, 392 F.3d at 818. In assessing the relevance of the information sought, the Court is guided by the scope of discovery announced by Federal Rule of Civil Procedure 26(b)(1). See Hahn v. Hunt, No. CV 15-2867, 2016 WL 1587405, at *1 (E.D. La. Apr. 20, 2016), aff'd, No. CV 15-2867, 2016 WL 6518863 (E.D. La. Nov. 2, 2016) (quoting Garvin v. S. States Ins. Exchg. Co., No. 1:04cv73, 2007 WL 2463282, at *5 n.3 (N.D. W. Va. Aug. 28, 2007) ) (explaining that as with other discovery devices, a Rule 45 subpoena is "subject to the parameters established by Rule 26"). Rule 26 provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1).

In addition to the subpoenaed party or person in possession of the subpoenaed documents, a person with "a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it" may challenge the subpoena. Howard v. Seadrill Americas, Inc., No. CV 15-2441, 2016 WL 7012275, at *2 (E.D. La. Dec. 1, 2016). Indeed, Rule 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D). To satisfy good cause, "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory

6

statements." In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1325–26 n. 3 (5th Cir. 1978).

   2. *Subpoena to MetroPCS*

The subpoena to MetroPCS seeks records showing the dates, times, and duration of Mr. Van Wright's cell phone calls and text messages in December 2018 as well as available location data. There is no dispute that plaintiff has a personal right or privilege in the records subject to the subpoena such that he has standing to challenge it. See Howard, 2016 WL 7012275, at *2 (holding that a plaintiff had standing to challenge a subpoena to his cell phone service provider for his phone records); Winter, 2014 WL 3778833, at *1 (same).

While an injured plaintiff's cell phone records are not necessarily relevant to his or her personal injury action, the court finds that here, Mr. Van Wright's cell phone records are clearly relevant. The evidence uncovered by defendants indicates that Mr. Van Wright's representations about his text messages and phone calls immediately after the accident may have been inaccurate. Mr. Van Wright's recollection of his conversations with Mr. Moore are contradicted by Mr. Moore's recollection and text messages. Mr. Moore's testimony suggests that Mr. Van Wright may have exaggerated his alleged injury. The cell phone records will offer clarity into the true timing of Mr. Van Wright's communications with Mr. Moore. Because there is already some evidence that Mr. Van Wright's deposition testimony regarding who he called following the accident may be inaccurate, there is reason believe the records may reveal that he called other people after the accident besides those he could recall speaking to. His location information could also be relevant given that, according to Mr. Van Wright, he did not discuss hiring a lawyer with Mr. Moore, but according to Mr. Moore, Mr. Van Wright was driven to the office of Mr. Moore's counsel by Mr. Moore four days after the accident. The court finds that the defendants have made

7

a sufficient showing that Mr. Van Wright's full cell phone records (excluding the content of his text messages) for the period from the date of the accident, December 14, 2018, through December 19, 2018, are relevant for these purposes. This information is not privileged. See Winter, 2014 WL 3778833. The court finds that records more than 5 days after the accident do not appear to be relevant to the post accident communications that Defendants are interested in. They are not discoverable at this time.

With regard to the period before the accident, the court finds these records are relevant to determine whether Mr. Van Wright's cell phone was broken, as he testified. The records may also be relevant to the extent they reflect conversations with Mr. Moore. Thus, the court finds these records are also discoverable. However, the court finds that except for the phone number of Mr. Moore, the actual phone numbers (rather than the fact that phone numbers were dialed or texted), is not relevant. In light of Mr. Van Wright's privacy interest in this information, the court will allow Mr. Van Wright's counsel to redact the phone numbers from the records between December 3, 2018 and December 13, 2018, except for the phone number of Mr. Moore and the area code of the remaining phone numbers so that is clear that a phone number and not some other piece of information has been redacted. Records for the period of December 1-2, 2018 will also be excluded because Van Wright did not board the BRIARWOOD until December 3, 2018. Although it is unclear what period of time Mr. Van Wright testified his phone was not working, the court finds this 10 day period sufficient. Nor is location data relevant while Mr. Van Wright was on the vessel and thus it can be redacted from the December 3 through December 13 records.

With regard to Mrs. Van Wright's phone records, there is no dispute between the parties that her records are not relevant. The defendants did not know whose name the account was under and what phone number Mr. Van Wright was using. In order to exclude Mrs. Van Wright's records

from the production, counsel for Mr. Van Wright will determine which phone number was being used by Mr. Van Wright from December 3, 2018 through December 19, 2018, and will provide this information to the defendants by December 15, 2020. Mrs. Van Wright's phone records will be excluded from the subpoena.

## Conclusion

For the foregoing reasons, the Motion to Quash is GRANTED in part and DENIED in part. The subpoena is hereby limited to the period of December 3, 2018 and December 19, 2018 and limited to exclude the phone number used by Mrs. Van Wright. On or before December 15, 2020, Mr. Van Wright's counsel will notify defendants which phone number was used by Mr. Van Wright from December 3, 2018, through December 19, 2018. When the records are received by defendants' counsel, they will forward them to Mr. Van Wright's counsel without reviewing them. Mr. Van Wright's counsel will confirm that Mrs. Van Wright's phone records and information for the period from December 1, 2018, through December 2, 2018, and from December 20, 2018 through December 31, 2018 are excluded and if they are not, shall redact them. For the period of December 3, 2018 through December 13, 2018, Mr. Van Wright's counsel may redact the phone numbers, except for their area codes and except for the phone number of Mr. Moore.  Also for the period of December 3, 2018 through December 13, 2018, Mr. Van Wright's counsel may redact location data.

New Orleans, Louisiana, this 11th day of December, 2020.

_____
Janis van Meerveld
United States Magistrate Judge

9